MANUEL M. MARTÍNEZ, Plaintiff and Appellant, v. PEDRO VÁZQUEZ TORRES, Defendant and Appellee.

No. 5522. Argued December 1, 1931.—Decided May 24, 1932.

*Lens & Susoni* and *A. Suliveres Rivera* for appellant. *Luis Mercader* for appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the Court.

This is an action for the recovery of a parcel of land of 32 acres (*cuerdas*) located in the ward of Caonillas, municipal district of Utuado. The complaint was dismissed and plaintiff appealed, assigning in his brief the commission of five errors, all of which refer to the weighing of the evidence and the application to the facts of the provisions of the Civil Code

and of the Mortgage Law relative to the acquisition of ownership by prescription.

There is no doubt that plaintiff alleged and proved a *prima facie* title in his favor. From the certificate issued by the Registrar of Property of Arecibo, presented by defendant himself, the following facts appear:

The first record of a certain property of 60 acres, of which the disputed parcel is admitted to form part, was made in the registry on May 18, 1902, according to the text of the certificate, although probably it was not in 1902 but in 1912, as it also textually appears from the rest of said certificate. From said record it appears that the books of the old registries show an assignment and sale of the said property of 60 acres made by Juan Eduvigis Collazo to Manuel Belén Pérez by a deed executed on March 13, 1878.

The second record was made on May 18, 1912, and refers to the sale of the property by Pérez to his neighbor Felipe Rivera y Rivera, married, by deed executed on July 26, 1881.

On November 2, 1912, the registrar recorded the property in favor of Teresa Martínez Vélez, widow of Felipe Rivera, who died on November 30, 1889, and of their sons, Andrea, Jesús María, and Francisco Manuel. On the death of the latter he was succeeded by his sons, one of which died while a minor and was succeeded by his mother, Mrs. Rosaura Vázquez Collazo.

On September 10, 1912, the heirs of Felipe Rivera acknowledged to owe the plaintiff, Manuel María Martínez, the sum of $1,800, and to secure this debt they constituted a mortgage on the property of 60 acres. The mortgage produced the fifth record in the registry.

The sixth and last record affecting said property was made on April 17, 1913, and relates to the sale of the property upon an execution (*venta judicial*), to the plaintiff in the action brought by him to recover said debt.

Against the above showing, what did the defendant allege and prove that served as the basis of the decision of the district court in his favor?

He alleged to be the owner of the disputed parcel and as such to be in possession thereof. He invoked the provisions of the Civil Code relating to ordinary and extraordinary prescription as modes of acquiring ownership. He proved having bought the parcel in two portions: one of 14 acres, which upon a subsequent survey was shown to contain only 10 acres, and another of 32 which was similarly shown to contain only 18 acres, making a total of 28 acres. He purchased the parcel of land of 10 acres from Gerónimo Ríos Medina, by a deed executed on May 7, 1910, and the parcel of land of 18 acres from José Mercedes Collazo, by a deed executed on February 3, 1904. He presented both deeds in evidence, which were admitted without objection.

He further alleged and proved that his grantor, Ríos, had acquired title by purchase from Vicente Andújar under a deed dated March 8, 1903, Andújar having purchased from Vicente Bernacet by a deed executed on May 20, 1898, and Bernacet from Andrea Rivera, daughter and heir of Felipe Rivera y Rivera, by a deed of July 4, 1896. As to José Mercedes Collazo, vendor of the other portion, he alleged and proved that said Collazo had acquired it in turn from Vicente Bernacet by exchange with other lands some seven years previously, that is, in or about 1897, and since then had occupied it quietly and peaceably, Bernacet having acquired from the widow and children of Felipe Rivera by a deed of March 4, 1897.

The testimony of the defendant himself and specially that of his witness, Modesto Santiago, is conclusive on the question of the possession under claim of ownership of the parcel referred to, not only by the defendant but also by all his predecessors in interest up to Bernacet. Said testimony is corroborated by that of Ramón González Vargas, Narciso Nicolau Correa, José Robert Nicolau and Juan Ocasio. The pos-

session by the previous owners, Juan Eduvigis Collazo, Manuel Belén Pérez, Felipe Rivera, and his heirs, can not be doubted.

At the close of defendant's evidence, plaintiff requested permission to offer the testimony of some witnesses. The court consented and Vicente Bernacet and Jesús María Rivera testified.

The former stated that it was true that he had acquired the portion of land above referred to from Andrea Rivera, daughter and heir of Felipe Rivera, and from her husband by a deed executed on July 4, 1896; but he also stated that he had not been able to take possession because the other heirs objected. However, he admitted that he had sold it to Andújar. As to the other portion, said to have been exchanged by him with Collazo, he stated that it was true that he acquired the property from the heirs of Felipe Rivera by deed of March 4, 1897, and he attempted to exchange a part thereof with Collazo but an agreement could not be reached, and then the purchase from the heirs of Rivera was rescinded. He asserted that he was never in possession of the property. The testimony of Jesús María Rivera, son and heir of Felipe, corroborates that of Bernacet.

There is other evidence of the plaintiff as to interruption of possession to which we will refer further on in this opinion.

The case was thus submitted to the decision of the District Court of Arecibo, which, in deciding it in the manner we have already indicated, said in part in its opinion filed:

"Plaintiff proved that each of the persons from whom he purchased in 1904 and in 1910 had in turn acquired by a title that was legally sufficient to transfer the ownership, and hence by a just title, as required by law. Section 1853 of the Revised Civil Code and section 1952 of the former Civil Code. Vázquez did not purchase from persons who merely occupied the property, but from persons in possession who, by a title which complied with all the requirements of the Notarial Law had established their possession under claim of ownership. The titles held by Vázquez's grantors

were apparently just titles, sufficient to transfer the ownership of the parcels sold; just, true, and valid titles for the purpose of prescription: just, because they originated in a sale, sufficient to convey the ownership; true, because they have not been attacked as false; valid, because they are perfect in their external requirements and even involving their effectiveness, and their existence, according to section 1226 of the Civil Code, for in each case there was a subject matter of the contract, consent, and consideration.

"From 1897 when Collazo acquired and also from 1903 when Ríos bought (these being the two persons who sold to the defendant and who were in possession of the parcels), until the filing of the complaint in January 1927, the period of ten years necessary to acquire ownership by prescription as to persons present had fully elapsed. Section 1858 of the Civil Code. The lapse of said period of time perfected the purchase title. Actual possession under claim of ownership in good faith and under a just title for more than ten years, openly and uninterruptedly, gave defendant, as to persons present, a title which cannot be impeached.

"See *Picart* v. *De León,* 22 P.R.R. 553; *Martorell et al.* v. *J. Ochoa & Brother,* 25 P.R.R. 707; *Heirs of Gutiérrez* v. *Pons et al.,* 32 P.R.R. 639; *Delgado et al.* v. *Encarnación et al.,* 35 P.R.R. 273.

"For the ordinary prescription of ownership there are required the possession of the property as owner, openly, peaceably, and uninterruptedly; good faith and just title in the possessor; and the lapse of the period fixed by law. These three requisites are satisfactorily found to be present in the instant case."

In our judgment, the conflict in the evidence having been adjusted in favor of the defendant without there being any showing that the court in so doing was moved by passion, prejudice, or partiality, or that it committed manifest error, we must conclude that defendant proved that he was the owner of the parcel of land in question, and that he had acquired the same not only by ordinary prescription, but also by extraordinary prescription (section 1859 of the Civil Code, 1930 ed.), since his chain of title dates back to 1878. His evidence shows that he purchased from Ríos and Collazo in 1910 and in 1904 respectively; that his grantor, Ríos, acquired by purchase from Andújar, and Andújar by purchase from Bernacet, and Bernacet by a similar title from Andrea

Rivera, and the latter by inheritance from her father Felipe, and Felipe by purchase from Pérez, a former owner and who had acquired in 1878 from Juan Eduvigis Collazo; and that his other grantor, Collazo, had acquired by exchange with Bernacet, and the latter by purchase from the heirs of Felipe Rivera who also derived title from the same Juan Eduvigis Collazo, from whom Pérez purchased in 1878, all having actually possessed the property under claim of ownership.

Let us see if the possession of the defendant and his predecessors in interest was interrupted. The testimony was conflicting. If we gave credence to the testimony of Bernacet, we would have to conclude, not only that it was interrupted, but that he never was in possession. His testimony, however, is contradicted by public documents, by the facts themselves, and by the testimony of Modesto Santiago, which is supported by the testimony of the other witnesses of the defendant. We have already stated that the conflict in the evidence was decided against the plaintiff.

As regards the interruption of the possession, what effect can be given to a certain proceeding for fixing the boundaries (*deslinde*), offered in evidence by plaintiff, and the possession which according to him was given to him by the marshal when the property was awarded to him in the foreclosure proceeding? Let us see.

On January 11, 1915, plaintiff appeared before the District Court of Arecibo, and claiming to be the owner of the property of 60 acres asked that its boundaries be fixed. After the case was heard, it was ordered that a survey be made, but the documentary evidence offered does not show what was the result finally obtained. The plaintiff himself testified that the demarcation (*deslinde*) was made, but it does not appear that any proceeding was instituted to make such demarcation effective. Plaintiff was put in possession of land which he himself admits defendant had occupied.

In view of the nature of the proceedings for the fixing of boundaries, such proceedings at most can be considered as a judicial citation, and hence the case must be governed by the provisions of section 1847 of the Civil Code, 1930 ed., which reads as follows:

"Section 1847.—Civil interruption shall also take place on judicial or notarial notice, provided that within two months from the execution thereof a complaint as to possession or ownership of the thing contested be presented to the court or judge."

Nothing was done by plaintiff until 1927, when he commenced this suit, thereby losing the benefit of the citation.

The evidence in the foreclosure proceeding shows that in 1913 the marshal put plaintiff in possession of the property of 60 acres. Plaintiff testified that said officer had demanded of the defendant to vacate the premises. Nothing is said in the return made in general terms by the marshal about such demand. Said officer was not called to testify. Defendant stated under oath that no demand was made upon him, that he was then and still is in possession as owner, and that the proceedings to fix the boundaries, instituted by plaintiff in 1915, so establish. But even accepting that said demand was made, as he failed to obey the same and plaintiff did not do anything until 1915, when he began the proceedings to fix the boundaries which also left defendant in possession, the interruption had no legal effect.

However, all that is rendered immaterial by the fact that the evidence, weighed in the manner stated, shows that when in 1913 the property of 60 acres was awarded to the plaintiff, the defendant had already acquired the ownership to the parcel of land in question by extraordinary prescription if we trace back the title to the original owner, Juan Eduvigis Collazo, and by ordinary prescription if only the title of the persons who directly sold to him the two portions that compose it be considered.

Perhaps it would be advisable to add that there is evidence in the record tending to show that the plaintiff, a brother of the husband of Andrea Rivera who jointly with her executed in 1896 the deed of sale to Bernacet from whom defendant derives title, knew the facts and situation long before the execution of the deed of mortgage by some of the heirs of Felipe Rivera and among them Andrea herself. He himself admitted that when the mortgage was executed he had knowledge that the defendant was in possession, explaining that he intended to buy from him, which fact was denied by defendant.

In virtue of all the foregoing, the appeal must be dismissed and the judgment appealed from affirmed.

Mr. Justice Córdova Dávila took no part in the decision of this case.